In the Matter of RYE PSYCHIATRIC HOSPITAL CENTER, INC.
DAVID E. DONIGER et al., Respondents-Appellants, v
JACK C. SCHOENHOLTZ et al., Appellants-Respondents.

Second Department, May 7, 1984

APPEARANCES OF COUNSEL

*Bleakley Schmidt, P. C.* (*Michael J. Trainor* of counsel), for appellants-respondents.

*Cerrato, Sweeney, Cohn, Stahl & Vaccaro* (*Julius W. Cohn* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

RUBIN, J.

Petitioners and the individual appellants-respondents are shareholders owning an equal interest in the appellant-respondent corporation, Rye Psychiatric Hospital Center, Inc. The three petitioners and appellants-respondents Schoenholtz and Pagliaro had been equal partners in the predecessor partnership, which had owned and operated Rye Psychiatric Hospital Center prior to its incorporation in 1973. In 1977, Leonard J. Essman became the sixth shareholder in the corporation. Although there was no formal election and no specification in the written by-laws as to the number of directors, the six shareholders met regularly and acted as directors of the corporation. When functioning as directors, the six shareholders referred to themselves as the "Governing Board". As time elapsed, petitioners and the individual appellants-respondents divided into two opposing factions.

In an attempt to break the resulting 3 to 3 stalemate, petitioners commenced a proceeding pursuant to CPLR article 78, since dismissed, *inter alia,* to enjoin appellant-respondent Essman from acting or voting as a director. Meanwhile, appellant-respondent Schoenholtz, in his capacity as a shareholder, wrote to appellant-respondent Essman, in the latter's capacity as secretary, demanding that a special meeting of shareholders be called for election of directors, pursuant to section 603 of the Business Corporation Law. Upon receiving the demand, Essman, acting as secretary, sent a notice to the shareholders that "a special meeting of the shareholders" would be held on November

12, 1982, "for the purpose of electing directors". No mention was made in the notice that the meeting was being called pursuant to section 603, nor that it was based on a demand made by Schoenholtz upon the secretary. The three petitioners did not attend the meeting; only the three individual appellants-respondents were present.

The general quorum provisions of paragraph (a) of section 608 of the Business Corporation Law provide that the holders of a majority of the shares entitled to vote shall constitute a quorum at a meeting of shareholders. However, when a special meeting to elect directors is called pursuant to section 603 of the Business Corporation Law, subdivision (b) of said section provides, in pertinent part, that: "[N]otwithstanding section 608 * * * the shareholders *attending * * * and entitled to vote* in an election of directors shall constitute a quorum for the purpose of electing directors, but not for the transaction of any other business" (emphasis added). Having a quorum under section 603, the individual appellants-respondents elected themselves as the three directors and then, acting as directors, voted themselves officers of the corporation.

Thereafter, petitioners commenced this proceeding pursuant to section 619 of the Business Corporation Law, to set aside the elections held at the special meeting of November 12, 1982, on the ground that the notice of the meeting was insufficient in that it did not apprise petitioners that the meeting was being called at Schoenholtz' demand and was pursuant to section 603 with its lesser quorum requirements.

Special Term found that the notice of the special meeting complied with sections 603 and 605 of the Business Corporation Law. Nevertheless, upon determining that the number of directors of the corporation was six, Special Term declared the special meeting of November 12, 1982, to be null and void on the ground that the shareholders present at the meeting "failed to elect a sufficient number of directors to conduct the business of the corporation". Since the special meeting was declared void, Special Term set aside, as unauthorized, the actions of the board of directors elected at said meeting, which included election of the individual appellants-respondents as corporate officers.

Since the judgment granted petitioners the relief requested, they are not aggrieved by the judgment and order appealed from and their cross appeals must be dismissed (CPLR 5511). Nevertheless, we may consider the arguments raised by them (see *Parochial Bus Systems v Board of Educ.*, 60 NY2d 539).

■ We agree with Special Term's finding that the notice of the special meeting was proper. When the corporate secretary calls the special meeting, neither section 603 nor section 605 of the Business Corporation Law requires the inclusion of the name or names of the person or persons demanding that the meeting be called. Subdivision (a) of section 603 provides that if a special meeting for the election of directors is not called by the board after the requisite time period, "holders of ten percent of the shares entitled to vote in an election of directors may, in writing, demand the call of a special meeting for the election of directors" and "[t]he secretary of the corporation upon receiving the written demand shall promptly give notice of such meeting". Under this section, the corporate secretary is the proper party to call a special meeting for the election of directors and to issue the notice of such meeting. Subdivision (a) of section 605 merely requires that notice of any meeting other than the annual meeting must indicate that it is "being issued by *or* at the direction of the person or persons calling the meeting" (emphasis added). Here, Essman, as the corporate secretary, was the proper person to call the meeting and to issue the notice. Therefore, only the appearance of his name was necessary on the notice to comply with section 605. Subdivision (a) of section 605 of the Business Corporation Law also provides that the notice of a special meeting shall state the purpose or purposes for which the meeting is called. Neither section 603 nor 605 requires the inclusion of a reference in the notice to the fact that the special meeting is being held pursuant to a specific statutory provision or by-law. Here, the secretary gave notice that "a special meeting of the shareholders * * * for the purpose of electing directors" would be held. Despite its terseness, the notice complied with the statutory requirements set forth in section 605 (cf. *Matter of Faehndrich*, 2 NY2d 468). Consequently, the special meeting of Novem-

ber 12, 1982, could not be declared void on the ground that the notice was insufficient.

■ We also agree with Special Term's determination that the number of directors of the corporation, before and after the special meeting, was six.

In this State, the number of directors constituting the entire board may be fixed by the by-laws, or by action of the board or shareholders when authorized by the specific provisions of a by-law adopted by the shareholders. If a number is not fixed in accordance with the methods prescribed, subdivision (a) of section 702 of the Business Corporation Law fixes the number at three. Moreover, if the number is initially fixed or thereafter is increased or decreased by a method not prescribed in section 702, the number so fixed is invalid (see *Model, Roland & Co. v Industrial Acoustics Co.,* 16 NY2d 703). Conceding that there had been six directors on the board prior to the November 12, 1982 election, appellants-respondents argue that there had only been three *de jure* directorships because the individual parties had omitted to fix the number of directors in accordance with subdivision (a) of section 702. Cognizant that a board comprised of three *de facto* directors was an irregularity voidable only at the court's discretion during the directors' terms of office (see *Mitchell v Forest City Print. Co.,* 107 Misc 709, affd 187 App Div 743; *Matter of Hellenic Cultural Circle v Kotsilimbas,* 79 Misc 2d 675), appellants-respondents contend that after expiration of all the directors' annual terms of office, the corporate membership was entitled to hold a corrective election where voting would be restricted to the *de jure* directorships. Since only three directorships could be voted for at the corrective election held at the special shareholders' meeting and they were elected to the *de jure* directorships, they maintain that they alone constitute the board of directors. We reject this contention because we find the number of directors constituting the entire board was adopted by a by-law and, therefore, on November 12, 1982, when the election was held, the number of *de jure* directorships was six. "In the absence of mandatory charter or statutory provisions as to the mode of enactment of by-laws no particular mode of enactment or formality is necessary,

'and a by-law may thus be adopted either orally or in writing, or by acts as well as by words, and this may be evidenced by a uniform course of proceeding, or usage and acquiescence, as well as by an express vote manifested in writing' " (*Thistlethwaite v Thistlethwaite,* 200 Misc 64, 70; quoting from 18 CJS, Corporations, § 187, p 598; see 2 White, NY Corporations [13th ed], par 601.08; 8 Fletcher, Cyclopedia Corporations [Permanent ed], § 4173; 13 NY Jur 2d, Business Relationships, § 153; *Keating v K-C-K Corp.,* 383 SW2d 69, 71 [Tex]; *Buck v Troy Aqueduct Co.,* 76 Vt 75; *Elliot v Lindquist,* 356 Pa 385; cf. *Matter of Ivey & Ellington,* 28 Del Ch 298; *Reedy v Alderman,* 242 SC 552).

Subdivision (a) of section 601 of the Business Corporation Law provides that "[t]he initial by-laws of a corporation shall be adopted by its incorporator or incorporators". The statute does not set forth a particular method by which the initial by-laws must be adopted, nor, in this case, did the corporate charter. Therefore, the initial by-laws adopted by the incorporators may be established by custom, usage or by acquiescence in a course of conduct by those authorized to enact by-laws.

The minutes of the first meeting of shareholders, dated October 18, 1973, indicate that by-laws were adopted at the organizational meeting of the incorporators, and thereafter, said by-laws were approved, ratified and adopted by the shareholders. It is asserted that a set of Blumberg-form by-laws were the by-laws referred to at the meeting. The publisher of the Blumberg forms has intentionally left blank spaces in some of the by-laws to allow flexibility amongst various corporations in choosing, for example, the date annual meetings are to be held or the number of directors on the board. The date or number adopted is to be inserted in a blank space. In the instant case, none of the blank spaces were filled in. Evidently the Blumberg form used did not constitute the complete set of by-laws adopted by the incorporators at the organizational meeting.

As evidenced by the course of conduct exhibited by the individual parties throughout the entire life of the corporation up until the present contest for control, we find that the incorporators had agreed on the number of directors to constitute the entire board, albeit the number adopted was

not transposed into writing. A specific numerical figure was not transcribed because the number of directors constituting the entire board was to equal the number of shareholders owning an equal interest in the corporation and having the right to vote in an election of directors. For example, if there were only five such shareholders, the board was to be comprised of five directors; if there were six such shareholders, the board was to consist of six directors.

Except for appellant-respondent Essman, each shareholder owning an equal interest in the corporation and having the right to vote in an election of directors had functioned as a director of the board since the formation of the corporation. When Essman acquired an equal voting interest in the corporation, he also held himself out as a director and participated in the regularly scheduled board meetings. Until the present contest for control, all the individual parties acquiesced in a board comprised of a number of directors equal to the number of shareholders owning an equal voting interest in the corporation. Based on this continuous course of conduct, it can be implied that a by-law fixing the numerical composition of the board was adopted by the incorporators at the organizational meeting and, thereafter, adopted by a unanimous vote of the same men at their first shareholders' meeting. The numerical composition adopted was to assure one representative on the board for each holder of an equal voting interest in the corporation. Consequently, at the 1982 special shareholders' meeting, the lawful number of directors constituting the board was six.

Moreover, under the special circumstances of this case, all the parties are estopped from asserting that such a by-law was never adopted or that it was not adopted in the proper manner. As already noted, all the individual parties had acquiesced in a board comprised of a number of directors equal to the number of shareholders with an equal voting interest in the corporation. It was not until the present struggle for control that each faction sought to repudiate for its own personal advantage their prior course of conduct and assert a number of directors on the board that would deprive the opposing faction of equal represen-

tation. In the absence of prejudice to the rights of creditors or third parties, this practice will not be condoned.

■ The next issue is whether the individual appellants-respondents could reduce the number of directors constituting the board from six to three at the special meeting on November 12, 1982. The answer is no. Under section 603 of the Business Corporation Law, the shareholders attending the meeting and entitled to vote constitute a quorum only for the purposes of electing directors and not for the transaction of any other business. Consequently, there was an insufficient quorum of shareholders to effect a change in the number of directors constituting the entire board (see Business Corporation Law, § 608). Furthermore, there is no evidence that the individual appellants-respondents, acting in their capacity as either shareholders or directors, had complied with the mandates prescribed in subdivision (b) of section 702 of the Business Corporation Law for decreasing the number of directors.

Although we concur with Special Term's finding that the number of directors is six, we do not agree that the election of only three directors rendered the election void. The shareholders who attended had a sufficient quorum to elect themselves to new terms as three of the six directors.

The general rule is that while the election of more than the permitted number of directors is voidable, the election of a smaller number is not invalid as to those chosen (see *Matter of Excelsior Ins. Co.*, 38 Barb 297; see, also, 3 White, NY Corporations [13th ed], par 703.03, pp 7-41 — 7-42; *Potter v Patee,* 493 SW2d 58, 65 [Mo]).

Nor is the special meeting void because there was a failure to elect a sufficient number of directors to conduct the business of the corporation. In this case, a majority of the directors on the board is necessary to constitute a quorum sufficient to conduct corporate business (Business Corporation Law, § 707). Section 603 of the Business Corporation Law provides for the calling of a special meeting of shareholders to elect directors "if * * * there is a failure to elect a sufficient number of directors to conduct the business of the corporation". Section 603 does not declare invalid any prior election, even if that election was held at a special meeting called pursuant to this statutory provi-

sion. Instead, another special meeting may be called to elect additional persons to the remaining directorships until a sufficient number of directors has been elected to conduct the business of the corporation.

Although petitioners were not elected at the special meeting of November 12, 1982, they continue to serve as holdover directors of the appellant-respondent corporation. Subdivision (b) of section 703 of the Business Corporation Law provides that "[e]ach director shall hold office until the expiration of the term for which he is elected, and until his successor has been elected and qualified". Consequently, petitioners remain directors until such time as their successors have been elected and qualified (see *Ming v Simpkins,* 59 Misc 2d 853). This is in accord with the corporation's own by-laws which echo subdivision (b) of section 703.

Since the individual appellants-respondents, in their capacity as newly elected directors, were not sufficient in number to constitute a quorum of the board under the corporate by-laws or section 707 of the Business Corporation Law for the purpose of electing themselves corporate officers, said elections must be set aside.

We note that if the deadlock among directors and stockholders persists, a petition for the dissolution of the corporation may be brought (see Business Corporation Law, §§ 602; 1104, subd [c]).

MOLLEN, P. J., GIBBONS and WEINSTEIN, JJ., concur.

Cross appeals by petitioners dismissed, without costs or disbursements. Petitioners are not aggrieved by the judgment or order (CPLR 5511; *Parochial Bus Systems v Board of Educ.,* 60 NY2d 539).

Appeal by appellants-respondents from the judgment dismissed, without costs or disbursements. The judgment was superseded by the order, made upon reargument.

Order modified, on the law, by deleting the provision which adhered to the original determination with respect to the first decretal paragraph of the judgment and substituting therefor a provision deleting the first decretal paragraph of the judgment and replacing it with a provision denying so much of petitioners' application as sought to set

aside the election of the individual appellants-respondents as directors of the appellant-respondent corporation. As so modified, order affirmed insofar as appealed from by appellants-respondents, without costs or disbursements.