■ I. J. LAUER et al., on Behalf of Themselves as Shareholders of Rye Psychiatric Hospital Center, Inc., and on Behalf of All Other Shareholders of Said Corporation Similarly Situated, Respondents, v JACK C. SCHOENHOLTZ et al., Appellants, et al., Defendants. — In a shareholder's derivative action, defendants, Jack C. Schoenholtz, M.D., Rye Psychiatric Hospital Center, Inc., and Jack C. Schoenholtz, M.D. P. C., appeal from a resettled order of the Supreme Court, Westchester County (Slifkin, J.), entered August 22, 1983, which (1) denied the motion of defendant Rye Psychiatric Hospital Center, Inc., to dismiss plaintiffs' complaint as against it, (2) granted plaintiffs' cross motion to serve an amended complaint, which, *inter alia,* joined Doctors Leonard J. Essman and Salvatore J. Pagliaro as party defendants pursuant to CPLR 1003, and (3) ordered that pending resolution of the action any further meetings of the "Executive Committee" of defendant Rye Psychiatric Hospital Center, Inc., should be limited to certain enumerated subjects.

Resettled order affirmed, with costs.

Defendant Rye Psychiatric Hospital Center, Inc., owns Rye Psychiatric Hospital Center. The three plaintiffs and defendants Schoenholtz, Essman and Pagliaro each own one sixth of the voting shares of the defendant corporation and constitute its board of directors. The board of directors is currently deadlocked, as plaintiffs and the individual defendants are engaged in a contest for control over this closely held corporation.

On paper, there exists two distinct sets of by-laws: a set of Blumberg-form by-laws to govern the defendant Rye Psychiatric Center, Inc. (hereinafter corporate by-laws), and a set entitled "Rye Psychiatric Hospital Center Constitution and By-Laws" (hereinafter hospital's by-laws) to govern the operation of the hospital. The corporate by-laws provide for a board of directors, and an executive committee composed of three or more directors. As this court noted in a prior opinion said by-laws provide for a number of directors on the board equal to the number of shareholders owning an equal interest in the corporation and having the right to vote in an election of directors, which is currently six (*Matter of Rye Psychiatric Hosp. Center v Schoenholtz*, 101 AD2d 309). The hospital's by-laws also provide for a governing board, and an executive committee. According to the document, the official members of the governing board are the directors of defendant corporation and the executive committee consists of three officers of the governing board. Section 3 of article 1 of the hospital's by-laws acknowledges that the defendant corporation is the owner of the hospital's real property, building and contents and that any changes or alterations must meet with the corporation's approval before execution. Matters pertaining to the operation and administrative functions of the hospital are within the purview of the governing board.

Plaintiffs allege that defendant Schoenholtz, acting without authorization, has revised the hospital's by-laws to allow their coexistence with the corporate by-laws. According to plaintiffs, the hospital's by-laws were in effect when the hospital was owned and operated by the individual parties, with the exception of Dr. Essman, as a partnership. When the partners decided to incorporate in 1973, the hospital's by-laws were to be superseded by the corporate by-laws. Nevertheless, the former partners, who then met as directors of defendant corporation, continued to call themselves the governing board. Defendant Schoenholtz disputes these allegations contending that the incorporation was never intended to interfere with the "organizational structure" which operated the hospital.

Whereas, on paper, there exists two separate and distinct boards with different spheres of authority (a board of directors and a governing board), in actuality, the two boards have

functioned as one entity. When functioning as directors of the corporation, the individual parties have on some occasions referred to themselves as the board of directors and on other occasions as the governing board. Minutes of meetings of the governing board frequently record the transaction of corporate business.

On stationery of the governing board, defendant Schoenholtz called a meeting of the executive committee, which is allegedly composed of plaintiff Doniger and defendants Schoenholtz and Essman. Plaintiffs maintain that an executive committee does not exist because representatives were never duly elected to said committee by the individual parties, whether acting under the label of the board of directors or the governing board.

Since the individual parties, when meeting as the governing board, have not confined their agenda to the sphere of authority delineated in the hospital's by-laws, plaintiffs do not recognize any dichotomy that may exist on paper between the board of directors and the governing board. Alarmed that corporate business might be transacted at the meeting of the executive committee called by defendant Schoenholtz, which would render moot the issues raised in this shareholder's derivative action because plaintiffs' faction would be outvoted two to one by defendants' block, plaintiffs moved to enjoin the executive committee from meeting pending the resolution of this action.

In opposition to plaintiffs' motion, defendant Schoenholtz argued that the meeting was that of the governing board's executive committee and that its agenda was confined to the day-to-day operation and administration of the hospital to insure compliance with industry standards and to retain State accreditation. Therefore, Schoenholtz argued, there was no need for an injunction, as corporate business cannot be transacted by the governing board or its executive committee. We note that defendant Schoenholtz was careful not to disclose in his opposition papers whether or not an executive committee of the board of directors also exists and whether it is composed of the same three men.

Pursuant to a stipulation between the parties, Special Term, on June 3, 1983, orally directed that the meeting of the executive committee of the governing board could proceed, as scheduled, in accordance with an agenda which, in essence, was restricted to the day-to-day administration and operation of the hospital. In so ruling, the court acknowledged that it had made no finding of fact as to the existence of an "Executive Committee" or whether a distinction exists between the board of directors and the governing board. By resettled order, entered August 22, 1983, Special Term ordered that pending resolution of

the action any further meetings of the "Executive Committee" of defendant corporation shall be limited in accordance with the agenda set forth in the order of June 3, 1983.

On appeal, defendant Schoenholtz argues that Special Term improperly intruded into the internal affairs of the corporation by preventing "the one functioning Committee of the Board of Directors of the hospital from conducting corporate affairs", rather than confining its order to the executive committee of the governing board. For the first time on appeal, he alleges the existence of an executive committee of the board of directors composed of the same members as the executive committee of the board of governors.

The present controversy surrounding the executive committee apparently stems from the individual parties' careless disregard of the legal formalities of hospital and corporate management. In support of their application to enjoin the executive committee from holding any meetings, plaintiffs stressed the parties' prior course of conduct to demonstrate that the board of directors and the governing board function as the same entity. Therefore, regardless of the name defendant Schoenholtz may give the alleged executive committee, its membership consists of corporate directors and the agenda would include corporate business which would render academic the issues asserted in this litigation. Schoenholtz stressed the distinction between the two boards which exists on paper to support his contention that the scheduled meeting of the Executive Committee must proceed to perform necessary hospital administrative work in order for the hospital to maintain State certification. Based on the contentions asserted by the parties before Special Term, it is clear that the purpose of the stipulation and the order of June 3, 1983 was to maintain the *status quo* between the individual parties with respect to corporate matters while allowing the hospital to perform its day-to-day operations so that the hospital's certification would not be jeopardized. Accordingly, Special Term's resettled order properly restricted the agenda of the executive committee, whether this committee is composed of directors of the corporation's board of directors or officers of the hospital's governing board, to issues of hospital administration.

We have reviewed the parties' other contentions and find them to be without merit. Rubin, J. P., Boyers, Lawrence and Eiber, JJ., concur.